IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MONICA C. THOMAS, )
 )
    Plaintiff, )
 )
 )
v. ) Civil Action No. 1:13-cv-428
 )
 )
SUNTRUST MORTGAGE, INC., )
 )
    Defendant. )
 )
 )
 )

## MEMORANDUM OPINION

THIS MATTER comes before the Court on SunTrust Mortgage's ("Defendant's") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Plaintiff Monica Thomas, pro se, ("Plaintiff") brings an action alleging violations of the Americans With Disabilities Act, Title VII of the Civil Rights Act of 1964 on the grounds of race and gender discrimination, and of Virginia law on the grounds of intentional infliction of emotional distress.

Defendant employed Plaintiff in its Richmond, Virginia office from July 14, 2008, until July 15, 2012. Her position of Business Project Manager, as she notes, required her to work on-site. In January of 2011, however, she began requesting work-

from-home privileges, to which she was granted one day per week. This was less than the Plaintiff desired, and over the ensuing months she began to have various disputes over her employment – including disputes over her performance evaluation, her receipt of a verbal warning of insubordination, and the pace with which she received an earned title change. These disputes provided the basis for her March 2011 Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), where she alleged that Defendant placed her on a "corrective action" plan in retaliation for complaining about disparate treatment. Plaintiff testified that these complaints exist in her instant suit. The EEOC issued Plaintiff a Right-to-Sue letter in July 2011, advising her to file her lawsuit within the 90 day-window provided in statute. See 42 U.S.C. § 2000e-16(c). Plaintiff did not file her suit until May 20, 2013.

In August 2011, shortly after the issuance of Plaintiff's first right-to-sue letter, she took approximately eight-months of medical leave in light of an alleged heart attack. During this period Plaintiff requested, and Defendant granted, work-from-home privileges. This arrangement included a reduced schedule of four-hours-per-day for a two-week period. The parties repeatedly extended this arrangement – ultimately extending Plaintiff's four-hour-work-day schedule through April 9, 2012, and her work-from-home privileges through May 9, 2012.

About a month after returning on site to full-time work, Plaintiff resigned.

On October 2, 2012, Plaintiff filed a second Charge of Discrimination with EEOC, alleging the same disparate treatment alleged in her first Charge.  This second Charge also alleged being denied short-term disability benefits during her medical leave, and being given additional duties when she returned in April without additional compensation.  She alleged that her managers, Ann Burton Moore and Mark Shulman, possessed the prerogative to implement this disparate treatment regarding her duties, and her disability was denied reasonable accommodation. EEOC issued her a Right-to-Sue letter on January 9, 2013, from which she filed this suit on April 5, 2013.

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  "The burden of the moving party . . . may be discharged by simply pointing out 'that there is an absence of evidence to support the nonmoving party's case.'"  Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006), (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

The Court construes all reasonable inferences in favor of the non-moving party when determining whether there is a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986). The mere existence of some disputed facts does not merit a trial unless the disputed facts are material to an issue necessary for proper resolution of the case and the quality and quantity of the evidence offered to support a question of fact are adequate to support a jury verdict. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson, 477 U.S. at 247-48. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

Plaintiff claims Defendant violated the Americans with Disabilities Act (ADA) by failing to afford her disability certain reasonable accommodations. The ADA prohibits discrimination on the basis of disability, see 42 U.S.C. § 12112(a), and accordingly requires an employer to reasonably accommodate "the known physical or mental limitations" of a qualified employee, see id. at § 12112(b)(5)(A). To garner

relief, the Plaintiff must establish that she: (1) had a disability as understood by the statute; (2) the employer had notice of this disability; (3) the employee could perform the position's "essential functions" with reasonable accommodation; and (4) that such accommodations went unmade. See Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 387 n.11 (4th Cir. 2001)). The ADA's elements can only be met if the Plaintiff adhered to its filing requirements, which it adopts from Title VII. See 42 U.S.C. § 12117(a) (adopting Title VII's procedural requirements); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) ("Before a plaintiff may file suit under Title VII or the [ADA], he is required to file a charge of discrimination with the EEOC"). Accordingly, in a "deferral state" like Virginia, the Plaintiff has only 300 days from the date of the alleged discriminatory act to bring suit. See Puryear v. Cnty. of Roanoke, 214 F.3d 515, 517-18 (4th Cir. 2000) (discussing Virginia's status a as a "deferral state").

Plaintiff characterizes Defendant not paying her short-term disability benefits as a failure to afford a reasonable accommodation. There is no dispute that Plaintiff was eligible for such benefits under the Defendant's short-term disability plan at the outset of her medical leave. Nor, however, is there a dispute that Aetna Life Insurance Company, Defendant's third-

party administrator, determined that she was no longer eligible (as she was no longer "disabled" for purposes of the Defendant's disability plan) on October 12, 2011. She appealed Aetna's denial, and that was denied in February of 2012.

"The interpretive guidelines for the ADA reinforce the conclusion that reasonable accommodation does not include unscheduled paid leave." Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995) (citing 29 C.F.R. § 1630.2(o) (Appendix)). Defendant was thus under no ADA obligation to provide Plaintiff with short-term disability payments in spite of its own policy. Rather, it provided the Plaintiff with time off in addition to her accrued paid leave, and continued to accommodate Plaintiff's requests for work-from-home privileges and reduced hours at least nine times over the eight-month period for which she remained on medical leave. Plaintiff insists that she was not able to use her accrued paid leave, and calls into question Defendant's characterization of these events. But she provides nothing more than bald denials, which do not rise to a dispute of material fact. See Francis, 452 F.3d at 308. Additionally, the Plaintiff is barred by the ADA's filing requirements from relying upon Aetna's October 2011 denial, as it happened in excess of 300 days from the filing of her second Charge of Discrimination in October 2012.

Plaintiff also alleges in her Second Amended Complaint that Defendant violated the ADA when it asked for medical documentation to verify Plaintiff's need for accommodation. Yet the ADA regulations contemplate an "interactive process" for the employer to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." See 29 C.F.R. § 1630.2(o)(3). Far from being an intrusion, this ensures the Defendant is put on notice of the disability, and the Defendant has an accordant duty to initiate this process. See Wilson, 717 F.3d at 346-48. The Plaintiff claims not to be troubled by the inquiries as such, but rather the "discriminatory manner in which her records were requested." Yet she provides no evidence of disparate treatment outside her assertions, which are insufficient to survive Rule 56's standard. Accordingly, the evidence presented shows no dispute as to the bona fide nature of Defendant's requests to assess reasonable accommodations.

"Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise." Tyndall v. Nat'l Educ. Ctrs., 31 F.3d 209, 213 (4th Cir. 1994) (internal quotations omitted). Despite the Plaintiff admitting that her employment required her presence on site, there is no dispute that

Defendant repeatedly accommodated her recovery with <u>both</u> reduced hours and work-from-home privileges. What is more, the Plaintiff admitted in her November 11, 2013, deposition that her work-from-home privileges, at least from October 2011 onward, were necessitated by her relocation to Northern Virginia - not her disability alone. Even still, the Defendant allowed her to return to full-time work commensurate with her recovery. Plaintiff's argument that the Defendant violated the ADA by giving her additional work upon her return is thus unavailing. There is no dispute that Plaintiff expected additional work upon her return to full-time status, and that such work was understandable given the length of her leave. Her position required her presence on site, and her return to her workplace thus brought additional work. Plaintiff's ADA claims accordingly do not survive summary judgment because she rests them on unsupported allegations.

Plaintiff also raises arguments - some involving the same facts as her ADA claims - alleging race and gender discrimination under Title VII. At the summary judgment stage, Plaintiff can pursue "<u>two</u> avenues of proof" for her Title VII claims. <u>See</u> <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 318 (4th Cir. 2005) (emphasis in original). One avenue is to proffer "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an

impermissible factor such as race motivated the employer's adverse employment action." Id. (citing 42 U.S.C. § 2000e-2(m)). The other avenue is for the Plaintiff to demonstrate pretextual behavior by the employer as set forth by the United States Supreme Court in McDonnell Douglas Corp., v. Green, 411 U.S. 792, 802 (1973). That avenue requires the Plaintiff to establish the following prima facie case: (1) her membership in a protected class; (2) qualifications for, and satisfactory performance of, her job; (3) suffering adverse employment action notwithstanding her satisfactory performance; and (4) disparate treatment from similarly-situated employees not in her protected class. Cf. id. n.13 ("The facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from respondent [in McDonnell Douglas] is not necessarily applicable in every respect to differing factual situations."). Should the Plaintiff establish a prima facie case, the Defendant then possesses the burden to offer a non-discriminatory basis for the alleged adverse action, see St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 509 (1993). Defendant need only produce evidence of a non-discriminatory basis in response, "whether ultimately persuasive or not[.]" See id. The question is purely whether Defendant's evidence "take as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." See id.

(emphasis in original). If it does not, a genuine dispute as to material fact remains. Plaintiff's retaliation claims follow a burden shifting analysis nearly identical to that articulated in McDonnell Douglas. See, e.g., King v. Rumsfeld, 328 F.3d 145, 149-51 (4th Cir. 2003).

Some of Plaintiff's Title VII claims cannot survive summary judgment because they are barred by the statute's filing period. Virginia's status as a "deferral state" requires Plaintiff - in addition to having only 90 days from receiving EEOC's Right-to-Sue letter to bring a lawsuit, see 42 U.S.C. § 2000-e-16(c) - to have her Charge of Discrimination filed no later than 300 days from the alleged discriminatory act(s), see 29 U.S.C. § 626(d)(1)(B); see also Puryear, 214 F.3d at 517-18. Here, as discussed above, Plaintiff received her first Right-to-Sue letter in July 2011 and delayed filing a lawsuit until May 20, 2013. Plaintiff explained in her November 11, 2013, deposition testimony that she alleged "all the same, same complaints" in her first Charge of Discrimination as in her Second Amended Complaint now. The events underlying those claims in the first Charge all fall outside the 90-day filing window. They are: Plaintiff's work-from-home request and accordant disputes with her supervisor Ann Moore before her August 2011 medical leave; Plaintiff's 2010 performance evaluation that she cites as evidence of disparate treatment; the verbal warning of

insubordination she received, as revealed in a March 9, 2011, email; the October 12, 2011, Aetna decision to deny Plaintiff's application for short-term disability benefits; and the dispute over delaying her title change. What is more, these events all occurred more than 300 days before she raised them again in her second Charge of Discrimination on October 2, 2012. Accordingly, all of Plaintiff's Title VII allegations based on these facts are time barred. The only Title VII allegations Plaintiff can apply toward establishing a prima facie case are those based on events arising after the first Charge of Discrimination, and they are addressed below.

Plaintiff alleges that the process by which she was paid during her medical leave was disparately handled compared against Caucasian employees also under Mark Shulman's supervision. Her Second Amended Complaint alleges "[s]pecifically, the pay policy applied to white employees on medically prescribed half days was to allow a full day's pay for every day where the employees were able to work four or more hours." For her whereas, she alleges being "docked for four hours of pay for each and every day where I worked for hours or more . . . ." Yet the Plaintiff admitted in her November 11, 2013, deposition that she does not have evidence to support that allegation. This amounts to a failure to show either direct or

circumstantial evidence of improper motivation on the Defendant's part.

Even if the Plaintiff could make out a prima facie case on this point, the Defendant's evidence amply demonstrates non-discriminatory conduct. Defendant's evidence reveals that Plaintiff was allowed to use accrued leave during her recovery so as to not incur salary reduction, and that she was permitted to take unearned leave at full pay in 2012. Only when Plaintiff was no longer covered under any leave benefit with Defendant, in March of 2012, was her salary reduced commensurate with her part-time recovery schedule. Defendant further states that such a pay reduction is identical to its actions with two similarly-situated Caucasian employees. Based on the Plaintiff's inability to satisfy either avenue of proof available here, this theory of Title VII liability does not surpass summary judgment.

Plaintiff's Second Amended Complaint does not explicitly allege disparate treatment toward the Defendant's administration of short-term disability benefits, but to the extent it can be inferred that claim is also unavailing. The initial Aetna decision denying Plaintiff's eligibility for short-term disability benefits is not actionable because of the time limitations discussed above, so Plaintiff is left to claim against the February 3, 2012, decision affirming that denial on appeal. The Plaintiff provides no evidence suggesting that the

decision itself either directly or circumstantially evinces the Defendant's disparate treatment. Further, the basis for a prima facie case on this score would also be the basis for Defendant's rebuttal: Defendant merely implemented Aetna's denial of Plaintiff's short-term disability benefits, which is not itself discriminatory behavior. Accordingly, Defendant would meet its burden of production even if Plaintiff could meet her burden to establish a prima facie case of discriminatory disbursement of short-term disability benefits.

Plaintiff relies on her 2011 performance evaluation in an attempt to show adverse employment action on the basis of race or gender in violation of Title VII, and discriminatory retaliation. Her 2011 evaluation, finalized in May 2012, gave Plaintiff a rating corresponding to "fully successful" performance. She received a commensurate 2.0% salary increase in March of 2012. It is difficult to consider a performance evaluation resulting in a raise a downgraded view of Plaintiff's performance. Yet, even if it is, "a poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." See James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (internal quotations omitted). There is no dispute that the Plaintiff received a salary increase in light of her

performance, which is hardly a detrimental adjustment. Her performance review cannot thus constitute evidence of adverse employment action toward a prima facie case. Additionally, the Defendant has put forth undisputed evidence that Plaintiff received a performance peer review nearly identical to the aggregate score Plaintiff received in the performance review conducted by her superiors. The weight of the evidence reveals no impermissible basis for Plaintiff's review score – be it discriminatory or retaliatory. Plaintiff cannot accordingly survive summary judgment on this Title VII claim.

Plaintiff finally brings a claim for intentional infliction of emotional distress under Virginia law. Yet this merits little discussion, as this tort is disfavored in Virginia law. See, e.g., Ruth v. Fletcher, 237 Va. 366, 377 (1989) (noting that such claims should be "tightly controlled by the courts."). For the Plaintiff to survive summary judgment, she would have to demonstrate that there is a genuine dispute of material fact as to whether Defendant's conduct toward her "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Russo v. White, 241 Va. 23, 27 (1991). To conclude that Plaintiff's unsupported assertions raise a genuine dispute as to whether this standard is met would be to treat it like

hyperbole. Plaintiff's claim here cannot survive summary judgment.

An appropriate order shall issue.

/s/<br>
Claude M. Hilton<br>
United States District Judge

Alexandria, Virginia
January 15, 2014